# Bedford Bridge.

1. A bridge view must proceed in the manner provided in the case of roads; and a review is of right.

2. The better practice in case of bridge views is to permit the report as in road views to lie over for one term, or that the court should by rule provide that the report may be acted on at the first term, subject until the next, to exceptions and review.

3. The Acts of Assembly in relation to bridges, examined, compared and reviewed.

May 17th 1872. Before Thompson, C. J., Agnew, Sharswood and Williams, JJ.

Certiorari to the Court of Quarter Sessions of *Bedford county :* No. 77, to May Term 1872.

On the 16th of October 1871, on the petition of citizens of Bedford township and Bedford borough, in Bedford county, the Court of Quarter Sessions appointed viewers "for the site of a bridge over the Juniata river, at the north end of Richmond street," on the road leading from Bedford borough to St. Clairsville, &c.

On the 12th of February 1872, the viewers reported that a new

[Bedford Bridge.]

bridge should be erected at the place indicated, and that its erection would be of greater expense than said township and borough should bear. On the same day, the report was laid before the grand jury, who on the 13th, concurred in the report; on the 16th the court also concurred.

On the 22d of April, John G. Minnich, and a number of other citizens of Bedford county, petitioned for a review; on the 27th, the court refused to appoint viewers. In his opinion, after referring to the proceedings in the case, Hall, P. J., said :—

"A petition is now presented for the appointment of reviewers, and we are asked to order the commissioners to stay all further proceedings until the reviewers have made a report. And it is claimed that under the Act of 1836, in all cases of views of bridges, as of roads, when a report of viewers is presented to the court, it must be allowed to lie over until the next term of the court, in order to allow time for the filing of exceptions, or the presentation of a petition for a review—that the action of the grand jury, the court, and the commissioners was premature, and that the order of review now asked for is a matter of right, the application therefor having been made at the next term of the court after the report upon the original view.

"The 25th section of the Act of 13th of June 1836, is relied on to sustain this claim. * * *

"In determining this question, the whole Act of 1836 must be looked at. Section 4th, which is but a re-enactment of part of the 1st section of the Act of 6th of April 1802, provides expressly that in the case of a road the proceedings shall remain in fieri until the next term, and this is to give time for a petition for a review: Charleston Road, 2 Grant 467 ; Road to Ewing's Mill, 8 Casey 282.

"If by that time exceptions are not filed, nor any petition for a review presented, the road becomes a public highway by mere operation of law; the whole proceedings are then to be ' entered on record, and thenceforth such road shall be taken, deemed and allowed, to be a lawful public road or highway, or private road, as the case may be.'

"But the language in regard to bridges is very different. Section 35th of the Act of 1836, is a re-enactment of the 21st section of the Act of 1802, and provides, 'if on the report of the viewers, it shall appear to the court, grand jury and commissioners of the county, that the bridge is necessary, and would be too expensive for such township or townships, it shall be entered of record as a county bridge.' "

Minnich removed the record to the Supreme Court by certiorari.

The errors assigned were :—

[Bedford Bridge.]

1. That the court ordered the report of the viewers to be laid before the grand jury at the term at which it was made.

2. That the court concurred in the action of the grand jury, &c., at the term at which the report of the viewers was made.

3. That the court refused to appoint reviewers.

*J. Cessna* (with whom was *G. H. Spang*), for certiorari.—The laws in relation to roads and bridges are in the main similar : Act of June 13th 1836, §§ 1–4, 34, 35, Pamph. L. 555 et seq., 2 Br. Purd. 1272 et seq., pl. 1–4, 59, 60. The report should have been held over until the next term: Wallenpaupac Bridge, 4 Yeates 435 ; Smithfield Creek Bridge, 6 Wharton 369. The Act of February 11th 1854 (Pamph. L. 62), to consolidate the Road Laws of Beaver, Butler and Lawrence counties, extended by Act of April 5th 1835 (Pamph. L. 189), to Bedford county, is conclusive as to the right of review in case of a bridge.

*Russell & Longenecker*, contrà, referred to Long *v.* Commissioners of Franklin County, 2 Rawle 154 ; Commonwealth *v.* Commissioners of Monroe County, 2 W. & S. 495.

The opinion of the court was delivered, May 30th 1872, by

Agnew, J.—The proceeding to establish a county bridge consists of two distinct acts—the location of the site by a board of viewers, and the determination of the necessity of its being built by the county, by the court, the grand jury, and the county commissioners. The Act of 13th June 1836, § 35, directs in relation to bridges, that the court shall order a view *in the manner provided for in the case of roads*. Section 25th provides that in *all* cases of *views* for *any* purpose mentioned in this act, the court shall, on petition of any person interested, direct a *second* view, or *review* for the same purpose. A bridge view, which must proceed in the manner provided for in the case of roads, therefore falls directly within the words of the Act of 1836. A review is a matter of right. This is the settled law. By the Act of 5th April 1855, Pamph. L. 189, the road law of the 11th February 1854, Pamph. L. 62, relating to the counties of Beaver, Butler and Lawrence was extended to the county of Bedford. The first sect. of the act of 1854, enacts that the number of road and *bridge* viewers shall be three, and then directs that "every view, *review*, and *re-review* shall be made by the whole number of persons *so appointed*," and extends these provisions to the *inspection of bridges*. The second section directs that *in all cases* of the appointment of viewers in the said counties *to view* the *site of a bridge*, or to view and locate, vacate, &c., any public or private road, or to *review, re-review* the *same*, the said viewers, *reviewers, re-reviewers* or one of them shall, &c. The third section says : "If the viewers aforesaid shall de-

[Bedford Bridge.]

cide in favor of locating a site of a bridge or a public road, &c., which they were appointed to *review* or re-review, &c.   The third section also extends the right of *review* to views for *damages,* which by the decision in Newville Road, 8 Watts 172, had been denied.   The 5th section extends the right of review still further to views of damages in the cases of private roads.   Thus the Act of 1854 clearly refers *reviews* and *re-reviews* to the views of *bridge sites* as well as to those for public and private roads.   This act was drawn up under my supervision when President Judge of the counties of Beaver, Butler and Lawrence, for the purpose of having a single uniform system in the 17th district.   It was founded on the special act for Washington and Mercer counties, which had been extended to Beaver in the year 1843, and was entitled an " Act to consolidate and amend the road laws " of those counties, the original act being found defective in several respects. The reasons for the *review* of bridge views are obvious, and greatly concern the public.   The location of the site of a bridge is generally more important than that of the route of a road, and therefore demands all the precautions of views and reviews before it is finally determined.   The site of a bridge, unlike the route of a road, which may be changed or vacated, cannot be removed after the bridge is built.   The selection of the site is often difficult to determine.   The width, depth, and kind of bottom of the stream, the character of its banks, and the access or approach to it must all be consulted.   A mistake in these may result in the fate which attends those who have built upon the sand and not upon a rock. Certainly less wisdom ought not to be required of those who build bridges.   High bluffs of rock, or a low sandy flat, may make the approaches to a bridge costly in the extreme, and even perilous. In addition to their other duties, bridge viewers are required to consult the connections of the bridge with the adjacent public roads, and hence the 37th section of the Act of 1836 gives to them the power to change the bed of a road to be connected with the bridge.   Where the site of the bridge is confined by the nature of the stream to a certain spot, this may require the diversion of the connecting roads for a long distance.   That alone ought to carry a power of review.   Thus the letter of the general law, the provisions of the special act, and the reason and necessity of things demand a review.

It is supposed this clause of the 35th section of the Act of 1836, is opposed to a review, viz. : " and if *on the report* of viewers, it shall appear to the court, grand jury, and commissioners of the county, that such bridge is *necessary* and would' be too *expensive* for such township or townships, it shall be entered on record as a county bridge."   But *when* shall this necessity appear ? " On the report."   Are we to take this as meaning instantly, and to overrule the express language of the act, that in all cases of views

[Bedford Bridge.]

for any purpose maintained in the act, reviews shall be granted, the language of the special act also linking views and reviews together, both as to roads and bridges, and the reason and necessity of the thing ? Certainly not, when the whole proceeding is clearly reconcilable with the provisions of the law, as to views and reviews. It shall be in the manner (says the act) provided for in case of roads. Why then should not a bridge report lie over like a road report to the next term for exception and review ? It has been decided that the report is to be governed by the road law as to the time of its return : Bridge over Smithfield Creek, 6 Wharton 363. Why then is not the final confirmation of the report when the location of the site is disposed of, the *true* time when " on the report," the court, grand jury, and commissioners shall determine the *necessity* of the bridge as a county bridge. In fact the judicious selection of the site is essential to determine the question of expense, which is part of the duty of the court, jury, and commissioners. This construction is not only in harmony with the letter and spirit of the law, but subserves the best interests of the county ; instead of limiting the important act of location to a single set of viewers who may lack in skill, suffer from prejudice, or be misled by influence, or by interest. Or if it be thought a more convenient practice, the court, grand jury, and commissioners may act upon the report returned, subject to exceptions and review as to the location. Having power to establish rules of practice, the court may make the joint action of the three bodies subject to a *nisi* rule as in other cases. The order of the court refusing to appoint reviewers, and the final confirmation of the report of views are set aside, and the record is ordered to be remitted, and a *procedendo* awarded.